CAROL ANN FRANZEN, Plaintiff v. WALTER JOSEPH FRANZEN, Defendant

No. COA98-1300

(Filed 19 October 1999)

**1. Divorce— equitable distribution—Ohio antenuptial agreement—accounting of contributions not required**

In an equitable distribution case, the trial court did not misconstrue the Ohio antenuptial agreement by failing to account for the fact that most of the money used to buy the two pertinent properties titled as tenants by the entireties was defendant-husband's separate money that he either brought into the marriage or inherited from his mother during the marriage because the plain language of the agreement states an accounting of contributions is required only upon the sale of the real estate.

**2. Contracts— extrinsic evidence—no ambiguity**

The trial court did not err in excluding extrinsic evidence to show the parties' intent concerning their Ohio antenuptial agreement because there is no ambiguity in the agreement since it states separate assets do remain separate property, even if they change form, but only if they do not become marital property.

**3. Divorce— equitable distribution—order not void for uncertainty—specific enough to ascertain rights and obligations**

The trial court's equitable distribution order should not be rendered void for uncertainty based on the fact that it required defendant-husband to execute any documents submitted to him because the order is specific enough so that the parties can ascertain their respective rights and obligations, it specifically designates which property was to be encumbered by a security interest, and defendant was only required to sign those documents needed for plaintiff-wife to perfect her security interest and make a record of it.

Appeal by defendant from order entered 22 May 1998 by Judge John W. Smith in New Hanover County District Court. Heard in the Court of Appeals 18 August 1999.

*Lea, Clyburn & Rhine, by J. Albert Clyburn and James W. Lea, III, for plaintiff-appellee.*

*Ralph S. Pennington for defendant-appellant.*

LEWIS, Judge.

This controversy involves the construction and enforcement of an antenuptial agreement executed 19 July 1989 in the State of Ohio. Plaintiff and defendant married on 22 July 1989. Prior to their marriage, they signed the antenuptial agreement ("the Agreement") at issue here. The parties lived in Ohio for the first four years of their marriage and then moved to North Carolina in 1993. They divorced 16 August 1997.

[1] During their marriage, the parties acquired two pieces of property in North Carolina that they still owned at the time of their divorce: one located at 3600 Island Drive in North Topsail Beach ("the Topsail property") and the other located at 5816 Oak Bluff Lane in Wilmington ("the Oak Bluff property"). In its equitable distribution order, the trial court classified both of these as marital property under the terms of the Agreement and then divided them equally between the parties. Defendant contends that the trial court misconstrued the Agreement by failing to account for the fact that most of the money used to buy the Topsail and Oak Bluff properties was his separate money that he either brought into the marriage or inherited from his mother during their marriage. We disagree with defendant's proposed construction.

At the outset, we note that the parties specified Ohio law as the law governing the interpretation of their Agreement. Such choice of law provisions are valid and must be given effect. *Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Accordingly, we look to Ohio's laws in construing the parties' Agreement.

In Ohio, antenuptial agreements are treated as contracts, and general contract law is used to interpret them. *Fletcher v. Fletcher*, 628 N.E.2d 1343, 1346 (Ohio 1994). Under traditional contract principles, the plain language of the Agreement controls. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978). The Agreement here undertakes to define the parties' separate and marital property. It further provides that, upon divorce, the trial judge has discretion as to how to equitably divide the marital property, but has no such discretion as to the parties' respective separate property. In order to properly address defendant's arguments, we must then begin with the definitions of separate and marital property outlined in the Agreement.

Section Four defines "separate property" as follows:

[I]t is agreed and understood that the parties intend and desire that all property owned respectively by each of them, at the time of the marriage, and all property that may be acquired by each of them, individually and in their own names, from any source during their marriage . . . shall be respectively their separate property, . . . whether that asset or item has changed from one form to another, vested or reinvested. Such property shall be the separate property of that respective party, *unless otherwise provided in this Agreement.*

(emphasis added). The parties then proceed to define "marital property" in Section Five:

"Marital property" shall be any funds or property accumulated by the parties during the marriage, *which is put into joint names as tenants in common, joint tenants with the right of survivorship or other similar designation. Any real estate purchased by the parties during the marriage in their joint names, shall be marital property* and upon the sale of said real estate for any reason whatsoever, the net proceeds from said sale shall be divided between the Prospective Husband and Prospective Wife in an amount equal to the percent of cash contribution made by each of them . . . .

(emphasis added).

Thus, according to the plain language of the Agreement, all property is either separate or marital. Separate property is any property that is either brought into the marriage or acquired individually during the marriage, unless it falls under the definition of marital property. Marital property is then defined as any property accumulated by the parties that is titled in their joint names. Pursuant to this definition, the Topsail and Oak Bluff properties were properly classified as marital property; both properties were titled as tenants by the entireties.

Defendant, however, contends the Agreement requires that, in dividing the marital property, the trial court should have accounted for any contributions of separate property used to purchase the marital property. The plain language of the Agreement, however, belies his contention. The Agreement specifically states that an accounting of contributions is required only "upon the *sale* of said real estate." Upon *divorce*, no such accounting is required; the trial court is sim-

ply to consider "what is a fair and equitable division of the property . . . which fits into the definition of marital property." The trial court did not err by refusing to order an accounting for any separate contributions defendant may have made towards the purchase of the Topsail and Oak Bluff properties.

[2] In the alternative, defendant argues that the Agreement is ambiguous and that the trial court should have therefore permitted the introduction of extrinsic evidence showing the parties' intent. Under Ohio law, no extrinsic evidence or other methods of construction may be employed unless an agreement is ambiguous. *Packer, Thomas & Co. v. Eyster*, 709 N.E.2d 922, 926 (Ohio Ct. App. 1998). Defendant's claimed ambiguity is that the provision in Section Five that any property titled jointly is to be considered marital property clashes with the statement in Section Four that all separate assets are to remain separate, even if those assets change form. His argument, however, overlooks the language in Section Four that separate assets remain separate property "unless otherwise provided in this Agreement." This caveat eliminates any ambiguity. Separate assets do remain separate property, even if they change form, but only if they do not become marital property. When the parties titled the Topsail and Oak Bluff properties as tenants by the entireties, any separate contributions by defendant were automatically transformed into marital property. Because the "unless otherwise provided" caveat removes any ambiguity between Sections Four and Five, the trial court did not err in excluding all extrinsic evidence regarding the parties' intent.

[3] Finally, defendant contends that part of the trial judge's order should be rendered void for uncertainty. As part of its equitable distribution order, the trial judge ordered defendant to make a distributional payment of $42,845.75 to plaintiff. The trial judge then provided a method by which plaintiff could secure the distributional money owed to her. Specifically, the trial court stated, "Wife shall be entitled to a security interest in the real estate distributed to Husband [the Oak Bluff property] for the payment of the same. Husband shall immediately execute and return for filing any documents submitted to him by Wife to secure this obligation." Defendant argues that this order is so vague and uncertain that it would be impossible to enforce. We disagree.

"A judgment must be complete and certain, indicating with reasonable clearness the decision of the court, so that judgment may be enforced. If the parties are unable to ascertain the extent of their

rights and obligations, a judgment may be rendered void for uncertainty." *Morrow v. Morrow*, 94 N.C. App. 187, 189, 379 S.E.2d 705, 706 (1989) (citation omitted), *cert. denied*, 326 N.C. 365, 389 S.E.2d 816 (1990). Here, the trial judge's order is specific enough so that the parties can ascertain their respective rights and obligations. The trial judge specifically designated which property was to be encumbered by the security interest: the Oak Bluff property. By requiring defendant to execute and return "any documents submitted to him," the trial court was only requiring defendant to sign those documents needed so that plaintiff could perfect her security interest and make it of record. This requirement is not so vague and uncertain as to warrant that it be rendered void.

AFFIRMED.

Judges MARTIN and HUNTER concur.