DAVID I.H. PARK, JUNHIE Y. PARK, AND PARK FAMILY DENTISTRY, Plaintiffs v. MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, JEFFREY J. LANE, ANTHONY (MIKE) CUOMO, AND DOUGLAS HORNBERGER, Defendants

No. COA02-859

(Filed 15 July 2003)

1. **Appeal and Error— appealability—order denying arbitration**

An order denying arbitration is immediately appealable because it involves a substantial right which might be lost if the appeal is delayed.

2. **Arbitration and Mediation— retroactive application of SEC rules—signed agreements**

The trial court erred by applying SEC rules retroactively to determine whether there was a valid arbitration agreement in IRAs and a cash management account. The validity of an arbitration agreement is determined by the application of basic contract law principles. Here, the working cash management account clearly calls for arbitration and plaintiffs signed this agreement. Although plaintiffs did not recall receiving IRA Agreements, defendant produced Adoption Agreements for each of the IRAs which were signed by plaintiffs, and in each Adoption Agreement plaintiffs acknowledged receipt of the Custodial Agreement which contained the arbitration clause.

Appeal by defendants from judgment entered 8 May 2002 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 25 March 2003.

*Penry Riemann PLLC, by J. Anthony Penry, and Richard W. Rutherford for plaintiffs-appellees.*

*Smith Anderson Blount Dorsett Mitchell & Jernigan, LLP, by Donald H. Tucker, Jr. and J. Mitchell Armbruster, and Brobeck Phleger & Harrison, LLP, by Francis S. Chlapowski, for defendants-appellants.*

STEELMAN, Judge.

Defendants, Merrill Lynch, Pierce, Fenner & Smith, Inc.; Jeffrey J. Lane; Anthony (Mike) Cuomo; and Douglas Hornberger, appeal an order of the trial court denying their motion to stay proceedings

**PARK v. MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.**

[159 N.C. App. 120 (2003)]

and compel arbitration. They set forth three assignments of error. For the reasons discussed herein, we reverse and remand this case.

In 1986, plaintiff Park Family Dentistry established a working cash management account (WCMA) with Merrill Lynch. Between 1994 and 2000, plaintiffs David Park and Junhie Park established four individual retirement accounts (IRAs) with Merrill Lynch. On each of the IRA accounts, an "Adoptive Agreement" was executed. The Adoptive Agreements incorporated by reference IRA Custodial Agreements which specifically provided for arbitration in the event of any controversies that may arise with the accounts.

The WCMA had a margin feature which was used to purchase stocks. The account was heavily invested in technology stocks. When the value of the technology stocks dropped sharply, Merrill Lynch called the margin accounts, resulting in substantial losses to plaintiffs.

Plaintiffs filed this action against Merrill Lynch and Lane, Cuomo and Hornberger, who are employees or former employees of Merrill Lynch who provided investment advice to plaintiffs. Plaintiffs alleged three claims under North Carolina law: (1) violations of Chapter 78 of the North Carolina General Statutes regarding sales of securities; (2) negligence in advising plaintiffs on investments and margin trading; and (3) breach of fiduciary duty. None of plaintiffs' claims are brought under federal securities law.

Defendants filed a motion to stay the proceedings and compel arbitration on 31 December 2001. Defendants alleged that plaintiffs executed agreements when they opened each of their accounts, which required that disputes involving the accounts be arbitrated.

The trial court conducted a hearing on defendants' motion. It concluded that: (1) defendants had the burden to demonstrate the existence of an enforceable arbitration agreement; and (2) defendants failed to demonstrate such an agreement. With respect to the WCMA signed in 1986, the trial court found that the arbitration clause contained in its eighth paragraph failed to comply with the standards established by the Securities and Exchange Commission (SEC) in 1989. With respect to each of the IRAs, the trial court found that plaintiffs did not recall receiving IRA Custodial Agreements and did not agree to the terms of those documents. Defendants appeal.

[1] We note that an appeal of an order denying defendants' motion to stay proceedings and compel arbitration is an interlocutory appeal.

Generally, such orders are not immediately appealable. However, this Court has held that an appeal of an order denying arbitration is immediately appealable because it involves a substantial right which might be lost if the appeal were delayed. *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991). Therefore, this appeal is properly before us.

**[2]** The Federal Arbitration Act (FAA) mandates the enforcement of arbitration agreements and is enforceable in both state and federal courts. *Perry v. Thomas*, 482 U.S. 483, 96 L. Ed. 2d 426 (1987). Section 2 of the FAA specifically provides that it applies to certain provisions in contracts involving interstate commerce:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . ., or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1999). Securities brokerage agreements are contracts "involving" interstate commerce, and therefore, the FAA applies to them. *See Carpenter v. Brooks*, 139 N.C. App. 745, 749-50, 534 S.E.2d 641, 645, *rev. denied*, 353 N.C. 261, 546 S.E.2d 91 (2000). Thus, although plaintiffs' claims were brought under state law, the FAA governs the arbitration clauses in the instant case.

However, state law generally governs issues concerning the formation, revocability, and enforcement of arbitration agreements. *See First Options v. Kaplan*, 514 U.S. 938, 131 L. Ed. 2d 985 (1995); *Cook Chocolate Co. v. Salomon, Inc.*, 684 F. Supp. 1177 (S.D.N.Y. 1988); *Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 531 S.E.2d 874, *rev. denied*, 353 N.C. 268, 546 S.E.2d 129 (2000). The FAA only preempts state rules of contract formation "which single out arbitration clauses and unreasonably burden the ability to form arbitration agreements . . . with 'conditions on (their) formation and execution . . . which are not part of the generally applicable contract law.' " *Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 723-24 (4th Cir. 1990), *cert. denied*, 498 U.S. 983, 112 L. Ed. 2d 527 (1990) (citations omitted). *See also Doctor's Assocs. v. Cassarotto*, 517 U.S. 681, 134 L. Ed. 2d 902 (1996).

In the instant case, the agreements stipulate that all controversies shall be governed by the laws of the State of New York. Choice of law

clauses are enforceable in North Carolina. *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992). Therefore, the laws of the State of New York will determine whether the instant arbitration agreements are valid. We note that it does not appear that New York law conflicts with the FAA rules in this case. We further note that the law of North Carolina is substantially the same as that of New York in this case. The result would be the same if North Carolina law were to apply.

Section 7501 of the New York statutes provides:

A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.

N.Y. C.P.L.R. § 7501 (2001). "[T]he enforceability of agreements to arbitrate is governed by the rules applicable to contracts[.]" *Riccardi v. Modern Silver Linen Supply Co.*, 45 A.D.2d 191, 193 (N.Y. 1974), *aff'd*, 335 N.E.2d 856 (N.Y. 1975). "[I]t must be established that the arbitration clause was consented to by the parties." *Id.* at 195. If so, "in the absence of an established ground for setting aside a contractual provision, such as fraud, duress, coercion or unconscionability, a court must enforce the parties' arbitration agreement according to its terms." *Salvano v. Merrill Lynch, Pierce, Fenner & Smith*, 647 N.E.2d 1298, 1302 (N.Y. Ct. App. 1995). In the instant case, no one asserts the setting aside of the arbitration clause based on any of these grounds.

Defendants presented evidence that the WCMA was signed by David Park and Junhie Park on behalf of Park Family Dentistry in 1986. It contained the following arbitration provision in its eighth paragraph:

It is understood that the following agreement to arbitrate does not constitute a waiver by the Customer of the right to seek a judicial forum where such waiver would be void under the federal securities laws.

The Customer agrees, and by carrying an account for the Customer, [Merrill Lynch] agrees, that except as inconsistent with

PARK v. MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

[159 N.C. App. 120 (2003)]

the foregoing sentence, all controversies which may arise in connection with the WCMA Program, including but not limited to any transaction or the construction, performance or breach of this or any other agreement between the Customer and [Merrill Lynch], whether entered into prior, on or subsequent to the date hereof, shall be governed by the laws of the State of New York.

Any dispute hereunder shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Directors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event the Customer does not make such designation within five (5) days of such demand or notice, then the Customer authorizes [Merrill Lynch] to do so on behalf of the Customer.

The trial judge found this in finding of fact 3, but held that this provision was not enforceable because it failed to comply with disclosure standards adopted by the SEC in 1989. Although the trial court acknowledged that these standards were not adopted until three years after the execution of the WCMA, it found that the standards "are instructive and provide guidance as to the information that should be conveyed in order for an arbitration clause to be binding."

Prior to 1987, *federal* securities claims under the Securities Exchange Act of 1934 could not be arbitrated. *Wilko v. Swan*, 346 U.S. 427, 98 L. Ed. 168 (1953), overruled by *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 104 L. Ed. 2d 526 (1989) (upholding arbitration in federal claim). In *Shearson/American Express v. McMahon*, 482 U.S. 220, 96 L. Ed. 2d 185, *reh'g denied*, 483 U.S. 1056, 97 L. Ed. 2d 819 (1987), the U.S. Supreme Court held that federal claims could be arbitrated. These decisions prompted the SEC to promulgate new rules and standards pertaining to the arbitration of federal securities claims. (SEC Release No. 34-26805, 1989 SEC LEXIS 843). The trial court applied these rules in the instant case.

Here, all of plaintiffs' claims are state law claims. In 1985, prior to the execution of the WCMA, the U.S. Supreme Court held that where there were both state and federal securities claims arising from the

same transactions, an arbitration agreement as to the state claims would be enforced even if the federal claims were not subject to arbitration and duplicative proceedings would result. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 84 L. Ed. 2d 158 (1985).

It was therefore error for the trial court to apply the SEC rules retroactively to determine whether there was a valid agreement to arbitrate state law claims. The validity of an arbitration agreement is determined by the application of basic contract law principles. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 134 L. Ed. 2d 902 (1996). As aforementioned, the court must interpret the contract as written and according to its terms. *Salvano*, 85 N.Y.2d 173 at 182, 647 N.E.2d 1298 at 1302.

In the instant case, the WCMA agreement clearly calls for arbitration in the event of controversies involving the WCMA. Plaintiffs signed this agreement in 1986. Under New York law, a signed paper writing demonstrates full knowledge and assent as to what is therein contained. *See Level Export Corp. v. Wolz, Aiken & Co.*, 111 N.E.2d 218, 221 (N.Y. 1953).

As to the four IRAs, the trial court found that plaintiffs did not recall having received the IRA Custodial Agreements and did not agree to the terms contained therein. Each of the IRAs was established by the execution of an Adoption Agreement which contains the following language:

> By signing this agreement (the "Adoption Agreement"), I acknowledge (1) that there are fees for this account, (2) receipt of a copy of the Adoption Agreement and of the Merrill Lynch IRA Disclosure Statement and IRA Custodial Agreement and (3) that, in accordance with section 6.4 of the IRA Custodial Agreement (on pages 21 and 22 of the Merrill Lynch IRA Disclosure Statement and IRA Custodial Agreement), I am agreeing in advance to arbitrate any controversies which may arise with the custodian.

The trial court recited this language in findings of fact 6 and 7. We note that the later signed Adoption Agreements refers to pages 23 and 24 of the Custodial Agreement. In finding of fact 8, the trial court cited paragraph 6.4 of the Custodial Agreement, which read as follows:

> You agree that controversies which may arise between us, including, but not limited to, those involving any transaction or the con-

PARK v. MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

[159 N.C. App. 120 (2003)]

struction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

Applying New York law, the Second Circuit has held that arbitration clauses may be incorporated by reference as long as the additional document is described sufficiently in the written instrument *See Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97-98 (2d Cir. 2002); *Jones v. Cunard S.S. Co.*, 238 A.D. 172, 173 (N.Y. App. Div. 1933).

Plaintiffs' assertion that they do not remember having seen the IRA Custodial Agreements is not a defense to contract formation absent fraud or oppression, because parties to a contract have an affirmative duty to read and understand a written contract before signing it. *See Level Export Corp. v. Wolz, Aiken & Co.*, 111 N.E.2d 218, 220-21 (N.Y. 1953). Plaintiffs further contend that this case is controlled by *Sciolino v. TD Waterhouse Investor Servs.*, 149 N.C. App. 642, 562 S.E.2d 64, *rev. denied*, 356 N.C. 167, 568 S.E.2d 611 (2002). In that case, the plaintiffs opened a joint brokerage account and executed a document designated as a "New Account Application," which referenced a "Customer Agreement" that contained an arbitration clause. The plaintiffs denied ever receiving the Customer Agreement and defendants did not produce a copy of that document bearing the plaintiffs' signatures. This Court held that the defendants failed to demonstrate that there was a valid agreement to arbitrate and affirmed the trial court's denial of defendants' motion to compel arbitration.

However, in the instant case, defendants produced Adoption Agreements for each of the IRAs which were signed by plaintiffs. In each Adoption Agreement, plaintiffs acknowledged receipt of the Custodial Agreement which contained the arbitration clause. Further, the Adoption Agreements specifically stated that plaintiffs were agreeing to arbitration. As aforementioned, a signed paper writing demonstrates full knowledge and assent as to what is contained therein. *Level Export Corp., supra.*

Consequently, we hold that the trial court's findings of fact do not support its conclusions of law. Defendants demonstrated that there was a valid, written agreement to arbitrate as to both the WCMA and the IRAs by the provisions of the agreements referenced in the trial court's findings of fact. This matter is therefore reversed and remanded for entry of an order directing the parties to submit

to arbitration in accordance with the terms of the WCMA and IRA Custodial Agreements.

REVERSED AND REMANDED.

Judges WYNN and TYSON concur.