REBEKAH CHANTAY REVELS, Plaintiff v. MISS AMERICA ORGANIZATION, MISS · NORTH CAROLINA PAGEANT ORGANIZATION, INC., ALAN CLOUSE, BILLY DUNCAN, CHARLENE HAY, DOUG HUFF, TOM ROBERTS, DAVID CLEGG, BEVERLY ADAMS, and CANDACE RUSSELL, Defendants

No. COA03-1194

(Filed 6 July 2004)

**1. Arbitration and Mediation— choice of law in agreement— existence of agreement—threshold procedural question**

The trial court properly chose to apply the law of North Carolina rather than that of New Jersey to an arbitration question even though the arbitration agreement specified application of New Jersey law. Only one party signed the agreement and the existence of the agreement is a procedural issue. Procedural rights are determined by the law of the forum.

**2. Arbitration and Mediation— existence of agreement—document not signed by both parties**

The trial court's findings supported its conclusion that defendant did not show the existence of a written agreement to arbitrate where defendant did not sign the agreement and denied acceptance of the contract for purposes of defending the merits of plaintiff's claim.

Appeal by defendant Miss America Organization from judgment entered 31 March 2003 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 26 May 2004.

*Barber & Wilson, P.A., by Timothy C. Barber, Sean T. Partrick, Andrew H. D. Wilson, and Leslie Hickman-Loucks, for defendant-appellant Miss America Organization.*

*Barry Nakell for plaintiff-appellee.*

ELMORE, Judge.

In this appeal, we must determine whether the trial court erred in denying defendant Miss America Organization's (MAO) amended motion to compel arbitration of the dispute between MAO and plaintiff Rebekah Chantay Revels. For the reasons stated herein, we conclude that the trial court did not err, and we affirm the trial court's order.

The factual and procedural background is as follows: On 22 June 2002, plaintiff was designated "Miss North Carolina 2002" by defendant Miss North Carolina Pageant Organization, Inc. (MNCPO) after winning a public contest sponsored by MNCPO. MNCPO is a franchisee of MAO pursuant to a document entitled "Miss America Organization Official Franchise Agreement," (the Franchise Agreement), the terms of which required MNCPO to conduct a public contest (the State Finals) to select Miss North Carolina and to prepare Miss North Carolina for participation in the Miss America pageant (the National Finals). In return, MAO agreed to "accept the winner of the State Finals conducted by [MNCPO] . . . as a contestant in the National Finals provided that [MNCPO] has complied with the terms hereof and with such other rules and regulations as may be promulgated from time to time by MAO." Plaintiff and MNCPO executed a document entitled "Miss North Carolina 2002 Contract" whereby plaintiff was recognized as Miss North Carolina 2002 and agreed to "represent the State of North Carolina and [MNCPO] in the [National Finals] . . . ."

On 24 June 2002, following her selection as Miss North Carolina, plaintiff signed a document entitled "The Miss America Organization Application and Contract for Participation in the National Finals of the Miss America Competition" (the Application and Contract), which set forth plaintiff's duties and obligations regarding her competition in the National Finals. By signing the Application and Contract, plaintiff represented, *inter alia*, that she was "of good moral character and [she had] not been involved at any time in any act of moral turpitude" and that she had "never . . . engaged in any activity . . . that is or could reasonably be characterized as dishonest, immoral, or indecent." The Application and Contract also contained the following provisions, which are at the heart of the present appeal:

> 2.8.4. *Attorney Review of Application and Contract.* I have been given a sufficient opportunity to review this Application and Contract. . . . I have also had the opportunity to consult with an attorney of my own choosing to give me legal advice with regard to this Application and Contract. . . . (x) I have decided that I do not need to do so (check applicable choice). . . .

> . . . .

> 6.10. *Applicability of New Jersey Law.* This Application and Contract and its attachments shall be construed and interpreted under the laws of the State of New Jersey.

> . . . .

6.12. *Arbitration of Disputes.* Any controversy or claim arising out of or relating to this Application and Contract or any breach thereof shall be submitted to arbitration in Atlantic City, New Jersey in accordance with the Rules of the American Arbitration Association. Judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This section shall not in any way affect the rights of MAO to (1) seek injunctive relief as provided in Section 6.9 of this Application and Contract, or (2) take any action permitted by this Application and Contract to enforce the eligibility standards of the Program in the event that time does not permit the completion of an arbitration process before action must be taken.

Significantly, the Application and Contract was signed by plaintiff, but was never signed by any representative of MAO.

On 19 July 2002, MAO received an anonymous e-mail, later determined to have been sent by plaintiff's ex-boyfriend, implying that plaintiff had formerly cohabited with a "male non-relative" and that nude photographs of plaintiff existed. MAO forwarded the e-mail to MNCPO. Thereafter, in a meeting with MNCPO's Board of Directors, plaintiff confirmed the existence of the photographs. On 22 July 2002, MAO's Board of Directors voted to ask plaintiff to resign as Miss North Carolina, and if plaintiff refused to resign, to exclude her from competing in the National Finals. After MAO's decision was conveyed to MNCPO, the MNCPO Board of Directors likewise voted to ask plaintiff to resign, and to terminate her reign as Miss North Carolina 2002 if she did not. On 23 July 2002, plaintiff tendered her resignation as Miss North Carolina 2002.

On 1 September 2002, Plaintiff commenced the litigation underlying this appeal by filing a complaint, naming only MAO as a party defendant, in Robeson County Superior Court. Plaintiff's complaint asserted claims for breach of contract and specific performance, and also sought injunctive relief. On 4 September 2002, Chief Justice I. Beverly Lake of the North Carolina Supreme Court entered an order designating the matter as an exceptional case pursuant to Rule 2.1 of the General Rules of Practice for Superior and District Courts, and assigned the case to the Honorable Narley L. Cashwell of Wake County Superior Court.[1] On 5 September 2002, MAO filed a Notice of

---

1. The record indicates that on 3 September 2002, Chief Justice Lake had also designated a companion case, *Revels v. Miss North Carolina Pageant Organization*, File No. 02 CVS 11625, as an exceptional case and assigned it to Judge Cashwell.

Removal in the United States District Court for the Eastern District of North Carolina, Southern Division, removing the matter to federal court on the basis of diversity of citizenship.[2] On 6 September 2002, MAO filed (1) a Motion to Dismiss and Answer, and (2) a Motion to Compel Arbitration. Following an evidentiary hearing, the Honorable James C. Fox, Senior United States District Judge, denied plaintiff's motion for a preliminary injunction by order entered 19 September 2002. MAO's motion to compel arbitration was held in abeyance pending plaintiff's response.

On 21 October 2002, plaintiff filed a Motion For Leave to File First Amended Complaint, by which plaintiff sought to add as parties defendant MNCPO and the individual members of its Board of Directors and Executive Committee.[3] Plaintiff also sought to assert additional claims against MAO. On 5 December 2002, Judge Fox entered an order which allowed plaintiff's motion to amend, and, because addition of the new parties defendant destroyed diversity of citizenship, remanded the case to Robeson County Superior Court.[4]

In pleading her breach of contract claim against MAO in the amended complaint, plaintiff specifically alleged that "Plaintiff and Defendants MAO and MNCPO entered into the [Application and Contract]." Plaintiff's breach of contract claim against MAO is therefore grounded, at least in part, on the assertion that the Application and Contract—which contained an arbitration clause as set forth above and was signed by plaintiff, but not by MAO—represents a valid and binding agreement between plaintiff and MAO. In its amended answer to plaintiff's first amended complaint MAO

---

2. MAO is a non-profit corporation organized under the laws of the state of New Jersey, with its principal place of business in Atlantic City, New Jersey.

3. At the time of the events giving rise to the underlying litigation, Defendants Alan Clouse, Billy Duncan, Charlene Hay, Doug Huff, and Tom Roberts collectively comprised MNCPO's Board of Directors, and defendants David Clegg, Beverly Adams, and Candace Russell were members of MNCPO's Executive Committee. MNCPO is a North Carolina nonprofit corporation, and each of the individual defendants are citizens and residents of North Carolina. Neither MNCPO nor any of the individual defendants are parties to the instant appeal.

4. At the time Judge Fox entered his 5 December 2002 order, he had apparently received neither a copy of Chief Justice Lake's 4 September 2002 order designating the case as exceptional, nor a copy of Robeson County Senior Resident Superior Court Judge Robert F. Floyd, Jr.'s 4 September 2002 order transferring the matter from Robeson to Wake County. By entry on 8 January 2003 of an Administrative Order Re-Activating Case, the Honorable Donald W. Stephens ordered that "all papers shall be filed and proceedings conducted in Wake County unless Judge Cashwell notifies the parties otherwise."

acknowledged only that plaintiff signed the Application and Contract. For purposes of defending against the merits of plaintiff's breach of contract claim, MAO asserted therein, and continues to assert before this Court, that the Application and Contract does not represent a valid and binding agreement between MAO and plaintiff.

On 17 January 2003, MAO filed an Amended Motion to Compel Arbitration "pursuant to [the Application and Contract] signed by Plaintiff . . . on or about June 24, 2002[.]" In support of its motion, MAO alleged that "on or about June 24, 2002, Plaintiff . . . signed [the Application and Contract][,]" and "pursuant to Section 6.12 [of the Application and Contract], any controversy or claim arising out of or relating to the application and contract or any breach thereof shall be submitted to arbitration in Atlantic City, New Jersey . . . ."

MAO's amended motion to compel arbitration came on for hearing before Judge Cashwell on 3 February, 2003. By order entered 31 March 2003, Judge Cashwell denied MAO's motion to compel arbitration. Judge Cashwell's order contained the following pertinent findings of fact:

17. In her original and amended Complaints the Plaintiff has alleged and asserted the existence of a written contract between the Plaintiff and MAO. Specifically, the Plaintiff has alleged and asserted that Exhibit C (Court's Exhibit 1) to her First Amended Complaint [the Application and Contract] is a copy of that contract. While Court's Exhibit 1 does not bear the signature of an agent or representative of MAO showing acceptance of same, the Plaintiff has alleged in conclusory language without supporting factual allegations that MAO accepted this contract.

18. [The Application and Contract] provides in pertinent part[] . . . [that] [a]ny controversy or claim arising out of or relating to this Application and Contract or any breach thereof shall be submitted to arbitration in Atlantic City, New Jersey . . . .

19. The Plaintiff asserts two approaches in arguing her opposition to MAO's Amended Motion to Compel Arbitration. Under neither approach does the Plaintiff deny the existence of a contract, [the Application and Contract], between the Plaintiff and MAO.

20. Under her first approach the Plaintiff argues the Amended Motion to Compel Arbitration should be denied because MAO has denied in its Amended Answer that [the

Application and Contract] is a contract between MAO and Plaintiff and further that MAO has denied accepting same and acting in reliance on it as a valid contract binding on MAO and thusly MAO has not carried its burden of satisfying the requirement of N.C.G.S. [§] 1-567.3 of "showing an agreement described in G.S. 1-567.2."

. . . .

24. The [Application and Contract] does not show on its face that the document was accepted by MAO as a contract and MAO has denied acceptance of same. MAO has not shown the existence of a contract containing an arbitration agreement between MAO and the Plaintiff.

. . . .

Based on these findings, Judge Cashwell concluded that "MAO has not satisfied the requirements of N.C.G.S. 1-567.3(a)[]" to prove the existence of a written agreement between plaintiff and MAO to arbitrate, and denied MAO's amended motion to compel arbitration. From this order, MAO now appeals.

At the outset, we note that "an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South Homes v. Byrd,* 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991); *see also Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 159 N.C. App. 120, 582 S.E.2d 375, 377 (2003). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U.S. 614, 626, 87 L. Ed. 2d 444, 454 (1985); *see also Routh v. Snap-On Tools Corp.,* 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992).

MAO contends that the trial court erred by denying its amended motion to compel arbitration on the grounds that the arbitration clause in the Application and Contract, which was signed by plaintiff but not by any representative of MAO, evidenced an agreement by the parties to submit any dispute arising out of the Application and Contract to arbitration. We disagree.

[1] We must first address MAO's contention that the trial court erroneously applied North Carolina law in determining whether the parties had in fact agreed to arbitrate their dispute. MAO argues that

REVELS v. MISS AM. ORG.

[165 N.C. App. 181 (2004)]

because the Application and Contract contains a provision stating that it "shall be construed and interpreted under the laws of the State of New Jersey[,]" the trial court was required to apply New Jersey law in determining whether an agreement to arbitrate existed. However, in order to determine whether the parties had agreed to arbitrate their dispute, the facts of the present case required the trial court *not* to *interpret, construe,* or otherwise *determine the validity* of the Application and Contract's arbitration clause, but rather to determine whether the parties had *mutually agreed to be bound* by the Application and Contract itself, specifically the arbitration clause contained therein. Because the existence of such an agreement is a threshold requirement to compel arbitration, *see Mitsubishi Motors,* 473 U.S. at 626, 87 L. Ed. 2d at 454, we discern this to be a procedural, rather than substantive, issue. "Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." *Boudreau v. Baughman,* 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). Thus, we conclude that the trial court's application of North Carolina law was proper. *Sears Roebuck and Co. v. Avery,* 163 N.C. App. 207, 211, 593 S.E.2d 424, 428 (2004) (applying Arizona law, pursuant to choice of law provision in undisputed contract between the parties, to interpret and determine validity of arbitration clause also contained therein); *Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 159 N.C. App. 120, 122-23, 582 S.E.2d 375, 378 (2003) (same, applying New York law).

[2] Pursuant to N.C. Gen. Stat. § 1-567.2(a) (2003) (Repealed by Session Laws 2003-345, s.1, effective January 1, 2004 and applicable to agreements to arbitrate made on or after that date), "Two or more parties . . . may include in a *written contract* a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof." (Emphasis added) In addition, N.C. Gen. Stat. § 1-567.3(a) (2003) (Repealed by Session Laws 2003-345, s.1, effective January 1, 2004 and applicable to agreements to arbitrate made on or after that date) provides in pertinent part as follows:

On application of a party *showing an agreement described in G.S. 1-567.2;* and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the

issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.[5] (Emphasis added)

MAO argues that its burden under N.C. Gen. Stat. § 1-567.3 of showing a written agreement to arbitrate has been met by plaintiff's own pleadings, which uniformly allege the existence of a valid and binding contract between plaintiff and MAO in the form of the Application and Contract, which contains an arbitration clause. We are not persuaded by this argument.

In a recent opinion affirming the trial court's denial of a motion to compel arbitration, this Court stated as follows:

"The question of whether a dispute is subject to arbitration is an issue for judicial determination." [*Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001) (citing *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 89 L. Ed. 2d 648 (1986))]. This determination involves a two-step analysis requiring the trial court to "ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether 'the specific dispute falls within the substantive scope of that agreement.'" *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678 (quoting *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)).

A dispute can only be settled by arbitration if a valid arbitration agreement exists. N.C.G.S. § 1-567.2 (2001). "The party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992); *see Thompson v. Norfolk S. Ry. Co.*, 140 N.C. App. 115, 120, 535 S.E.2d 397, 400 (2000). "The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (citing *Routh*, 108 N.C. App. at 272, 423 S.E.2d at 794), *disc. review denied*, 356 N.C. 167, 568 S.E.2d 611 (2002). However, the trial court's determination of whether a dispute is subject to arbitration is a conclusion of law that is reviewable *de novo* on appeal.

---

5. Because it is undisputed that the purported agreement to arbitrate in this case was made, if at all, before 1 January 2004, N.C. Gen. Stat. § 1-567.2(a) and N.C. Gen. Stat. § 1-567.3(a) are applicable to the present case.

*Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678; *Brevorka v. Wolfe Constr., Inc.*, 155 N.C. App. 353, 356, 573 S.E.2d 656, 659 (2002), *disc. review denied*, 357 N.C. 61, 579 S.E.2d 385 (2003).

*Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004).

In the present case, our review of the record indicates there is competent evidence to support the trial court's findings that the Application and Contract "does not bear the signature of an agent or representative of MAO showing acceptance of same" and "does not show on its face that the document was accepted by MAO as a contract and MAO has denied acceptance of same." It is undisputed that the Application and Contract was not signed by MAO. Moreover, it is clear from MAO's pleadings and the arguments of its counsel that, for purposes of defending against the merits of plaintiff's breach of contract claims, MAO has throughout this litigation denied acceptance of the Application and Contract as a contract between itself and plaintiff. Because the arbitration clause contained within the Application and Contract was the sole basis for MAO's amended motion to compel arbitration, we hold that the trial court's findings support its conclusion that MAO failed to carry its burden of proving the existence of a written agreement between plaintiff and MAO to arbitrate, as required by N.C. Gen. Stat. § 1-567.3(a). Accordingly, the trial court's order denying MAO's amended motion to compel arbitration is

Affirmed.

Judges McGEE and McCULLOUGH concur.