SUE ALLISON BROADWELL ROBERTS, Plaintiff v. RONALD WAYNE ROBERTS, Defendant

No. COA04-1588

(Filed 20 September 2005)

**1. Marriage— premarital agreement—outstanding indebtedness on real property—loans not secured by that property—not included**

The phrase "outstanding indebtedness on" real property in a premarital agreement referred to unpaid debt supported by or attached to the property. The phrase does not include debts, such as personal loans, that are not secured by the property, regardless of whether the proceeds were applied toward purchase of the property.

**2. Marriage— premarital agreement—property purchased in both names—marital property**

Language in a premarital agreement dealing with retention of separate property and the marital property status of property purchased in both names, regardless of the source of funds, was not ambiguous when read with language in the introduction stating that each party would retain ownership of separate property except as otherwise provided.

**3. Marriage— premarital property—gift to marriage—not relevant**

The question of whether a down payment on real property was intended as a gift to the marriage would be relevant for equitable distribution, but was not for interpretation of a premarital agreement.

**4. Appeal and Error— preservation of issues—attorney's affidavit—failure to object at trial**

The admissibility of an affidavit from an attorney was not considered on appeal of a premarital agreement case where defendant did not object at trial.

**5. Contracts— premarital agreement—specific performance—other parallel provisions**

The question of whether the trial court's findings in a premarital agreement case supported a specific performance paragraph was not reached where that paragraph reiterated the

provisions of other paragraphs. The practical result would be the same if the specific performance paragraph was deleted.

**6. Marriage— premarital agreement—contribution to joint account—language of agreement plain**

The trial court erred by granting summary judgment for defendant on a claim for breach of premarital agreement terms concerning contributions to a joint account until an indebtedness on a property was satisfied. The language of the agreement was plain, the amount to be contributed was plainly stated and no further agreement was necessary, and defendant cited no authority that would allow a party to evade compliance with a valid contract on the grounds that the parties no longer had a relationship or that he no longer agreed with the contract.

**7. Marriage— premarital agreement—attorney fees**

An award of attorney fees under a premarital agreement was remanded where the agreement provided recovery of attorney fees for the prevailing party, but a part of the lower court's summary judgment was reversed.

Appeal by plaintiff from judgment and order entered 29 April 2004, by defendant from judgment and order entered 2 July 2004, and by plaintiff and defendant from order entered 28 September 2004, all orders entered by Judge Anderson D. Cromer in Guilford County Superior Court. Heard in the Court of Appeals 23 August 2005.

*William G. Barbour, and Floyd and Jacobs, L.L.P., by Constance F. Jacobs, for plaintiff.*

*Mercedes O. Chut for defendant.*

LEVINSON, Judge.

This appeal arises from the interpretation of a premarital agreement executed by plaintiff (Sue Roberts) and defendant (Ronald Roberts). We affirm in part and reverse and remand in part.

The relevant facts are largely undisputed and may be summarized as follows: The parties were married 9 September 2000 and separated 5 November 2002. Shortly before their marriage, plaintiff and defendant executed a premarital agreement, which included provisions defining separate and marital property, establishing a joint checking account, and addressing disposition of property in the event that they

separated. On 1 October 2002 plaintiff filed a claim against defendant, generally seeking enforcement of the premarital agreement. Plaintiff subsequently filed an amended complaint seeking damages for breach of the premarital agreement's terms regarding the parties' joint checking account, and for anticipatory breach of these terms. She also sought a declaratory judgment declaring the parties' rights under the agreement's provisions for disposition of marital real estate upon separation of the parties. On 4 March 2004 plaintiff filed a motion for summary judgment on all her claims. The trial court entered an order on 29 April 2004, granting summary judgment for defendant on plaintiff's claim arising from the parties' joint checking account, from which order plaintiff appealed. On 2 July 2004 the trial court granted summary judgment for plaintiff on her claims for breach of the real estate buyout provisions of the premarital agreement. Defendant has appealed this order. In addition, both parties have appealed the trial court's order of 28 September 2004, which awarded plaintiff a total of $19,007.00 in attorneys' fees.

## Standard of Review

The parties appeal from orders granting summary judgment. Under N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." " 'An issue is genuine if it may be maintained by substantial evidence. An issue is material if the facts as alleged would constitute a legal defense, would affect the result of the action or would prevent the party against whom it is resolved from prevailing in the action.' " *Development Corp. v. James,* 300 N.C. 631, 637, 268 S.E.2d 205, 209 (1980) (citing *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E.2d 897 (1972)).

"The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact[,]" *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985), and "evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.,* 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted). However, when a summary judgment motion is "supported as provided in this rule, an adverse party . . . must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2003).

"Our Court's standard of review on appeal from summary judgment requires a two-part analysis. Summary judgment is appropriate if (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000).

**[1]** In the case *sub judice*, summary judgment was entered on claims arising from a premarital agreement, defined by N.C. Gen. Stat. § 52B-2 (2003) as "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." A valid premarital agreement "must be in writing and signed by both parties," N.C. Gen. Stat. § 52B-3 (2003), and "becomes effective upon marriage." N.C. Gen. Stat. § 52B-5 (2003). "The principles of construction applicable to contracts also apply to premarital agreements[.]" *Harllee v. Harllee*, 151 N.C. App. 40, 46, 565 S.E.2d 678, 682 (2002) (citing *Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989)) (other citation omitted). Thus, "absent fraud or oppression . . . parties to a contract have an affirmative duty to read and understand a written contract before signing it." *Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 N.C. App. 120, 126, 582 S.E.2d 375, 380 (2003). And, when "interpreting contract language, the presumption is that the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Stewart v. Stewart*, 141 N.C. App. 236, 240, 541 S.E.2d 209, 212 (2000) (discussing *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946)).

## Defendant's Appeal—Real Estate Buyout Provision

Defendant appeals the trial court's order of summary judgment for plaintiff on claims based on the premarital agreement's real estate buyout provision. Defendant contends that the evidence raises genuine issues of material fact or, in the alternative, that he is entitled to summary judgment. We disagree.

The premarital agreement includes, in pertinent part, the following provisions:

. . . .

4. RETENTION OF SEPARATE PROPERTY. Except as otherwise provided herein, each party shall during his or her life-

time: A. Retain the sole and separate ownership of his or her respective separate property. . . .

5. DEFINITION OF SEPARATE PROPERTY. . . . [T]he term 'separate property' shall mean all of a party's right, title, claim and interest, . . . to all property, real or personal, . . . which was owned by each party at the time of their marriage. . . .

. . . .

10. JOINTLY HELD PROPERTY. . . . Joint property shall include all assets held in both names[.] . . . Each party shall have an undivided one-half interest in jointly held property no matter by whom purchased or the nature of funds used in making the purchase.

11. REAL PROPERTY. Real property purchased in Ron and Sue's joint names shall be marital property regardless of the source of the funds. . . . In the event of a separation, . . . either party may buy the other out for one half of the fair market value of the property less 6% (to reflect an imputed realtor's fee), less one half of the outstanding indebtedness on said property. . . .

The record evidence establishes the following undisputed facts: In June 2001 the parties purchased real property on Hobbs Road, in Greensboro, North Carolina (the "Hobbs Road property"), which is jointly owned and titled in the names of both parties. The Hobbs Road property purchase price of $250,000 was paid from two sources of funds. Defendant obtained a personal loan of approximately $100,000 from his separately owned brokerage account, and used the proceeds of this loan to pay the $100,000 down payment on the Hobbs Road property. In addition, the parties obtained a joint loan of $150,000 from Chevy Chase Bank, and jointly executed a promissory note for $150,000 and a deed of trust in favor of Chevy Chase Bank. The $150,000 loan secured by a deed of trust is the only lien on the Hobbs Road property.

The parties have agreed to divide the Hobbs Road property using the buyout provision of the premarital agreement; they also agree that the value of the property on the date of separation was $259,000.00, and that the amount of the imputed commission is $15,540.00. The parties disagree, however, on the proper interpretation of the phrase "outstanding indebtedness on said property." Defendant argues that, because he used the money borrowed from

his personal brokerage account for a down payment on the Hobbs Road property, his personal loan became part of the "outstanding indebtedness on" the property. Plaintiff, however, contends that "outstanding indebtedness on" the property properly refers only to debt secured by the property, which in this case is limited to the debt owed on the $150,000.00 promissory note secured by the deed of trust. We agree with plaintiff.

The phrase "outstanding indebtedness on" the property contains no obscure terms, and may be interpreted in light of the words' ordinary meaning in the context of a real estate transaction. Thus, "outstanding" means "unpaid; uncollected"; "indebtedness" is "something owed; a debt"; and "on" means "supported by or attached to." BLACK'S LAW DICTIONARY 771, 1129 (7th ed. 1999); THE OXFORD ENCYCLOPEDIC ENGLISH DICTIONARY 1014 (Judy Pearsall & Bill Trumble, eds., Oxford University Press 2d ed. 1995). Accordingly, the "outstanding indebtedness on" the property may be rephrased as the "unpaid debt supported by or attached to" the property. This clearly includes the debt owed on the promissory note because it is secured by the Hobbs Road property, and thus is "supported by or attached to" the property. However, defendant's loan from the brokerage account is secured by his stocks and other assets he has in that account, and is not secured by the Hobbs Road property. Therefore, it is an indebtedness on the assets in his brokerage account, and not a debt on the Hobbs Road property. We conclude that the "outstanding indebtedness on" the property does not include debts, such as personal loans, that are not secured by the property, regardless of whether the proceeds of such a personal loan were applied towards the purchase of the property. Defendant cites no authority to the contrary and we find none.

[2] Defendant also argues that the premarital agreement is internally inconsistent and ambiguous, and that a jury must resolve the "ambiguity." The ambiguity posited by defendant is a purported "conflict" between (1) language in paragraph four stating that after marriage each party would retain "sole and separate ownership of his or her respective separate property," including defendant's brokerage account, and (2) language in paragraph eleven stating that "[r]eal property purchased in Ron and Sue's joint names shall be marital property regardless of the source of the funds."

Defendant's argument ignores the following introductory language of paragraph four: "Except as otherwise provided herein each party shall" retain the ownership of separate property. Para-

graph eleven does not conflict with paragraph four, but is merely one of the exceptions that are "otherwise provided herein." Defendant's argument was rejected by this Court in *Franzen v. Franzen*, 135 N.C. App. 369, 520 S.E.2d 74 (1999). The defendant in *Franzen*, like this defendant, argued that there was an internal inconsistency in a premarital agreement, based on a similar purported "ambiguity." This Court held:

> Defendant's claimed ambiguity is that the provision in Section Five that any property titled jointly is to be considered marital property clashes with the statement in Section Four that all separate assets are to remain separate, even if those assets change form. His argument, however, overlooks the language in Section Four that separate assets remain separate property unless otherwise provided in this Agreement. This caveat eliminates any ambiguity. Separate assets do remain separate property, even if they change form, but only if they do not become marital property.

*Franzen*, 135 N.C. App. at 372, 520 S.E.2d at 76. We find *Franzen* controlling on this issue.

[3] Defendant also argues that he did not "intend" for the down payment to be a "gift to the marriage." This issue is relevant when the trial court enters an order for equitable distribution. *See* N.C. Gen. Stat. § 50-20(b)(2) (2003). However, the instant case does not involve equitable distribution. Defendant offers no authority suggesting that consideration of his subjective intentions as to the down payment is germane to our interpretation of this premarital agreement, and we find none.

[4] Defendant next argues that the trial court erred by considering the affidavit of attorney Richard Shope, on the ground that the affidavit was not admissible under the North Carolina Rules of Evidence. However, defendant failed to object to this affidavit at the trial level. "[T]o preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1). In the instant case, defendant did not object to the trial court's consideration of the affidavit. "Since this issue was never considered by the trial court and is raised for the first time on appeal, it is not properly before this Court, and we decline to address it." *In Re Foreclosure of Brown*, 156 N.C. App. 477, 490, 577 S.E.2d 398, 406 (2003).

We have considered defendant's remaining arguments regarding the real estate buyout issue, and find them to be without merit. We conclude that the trial court did not err by granting summary judgment in favor of plaintiff on the issue of the real estate buyout.

[5] Defendant argues next that, even assuming the court correctly entered summary judgment for plaintiff, it erred by including in its order a paragraph ordering "specific performance" of the premarital agreement contract. The relevant sections of the order are as follows:

> IT IS HEREBY ORDERED . . . as a matter of law, that Judgment shall be entered in favor of the Plaintiff, on the issues related to Defendant's buy out of Plaintiffs interest in the joint real estate/Hobbs Road Property. It is therefore ORDERED as follows:

> 1. Defendant shall pay Plaintiff, an amount equal to the fair market value of the Hobbs Road joint real estate ($259,000.00) less 6% imputed real estate commissions ($15,540.00), less the amount required to satisfy the joint mortgage lien indebtedness secured by the Hobbs Road joint real estate on August 4, 2002 and said net total being divided by two (FMV - indebtedness - 15,540.00 = x, x + 2).

> 2. Plaintiff shall execute a Quit Claim Deed in favor of Defendant to be delivered to the closing on the satisfaction of the joint indebtedness for recordation simultaneous with the satisfaction of the joint indebtedness and payment to Plaintiff as set forth above.

> 3. Plaintiff is entitled to the relief of specific performance of the Pre-Marital Agreement provisions requiring Defendant to pay Plaintiff for her interest in the joint real estate/Hobbs Road property in the amount equal to one-half of the fair market value of the property, stipulated to be $259,000.00 less an imputed 6% real estate commission, stipulated to be $15,540.00, less the amount required to satisfy the joint mortgage lien indebtedness secured by the property on August 4, 2002, said total being divided by two ($259,000 - $15,540.00 - balance owed on joint mortgage lien on August 4, 2002 = x, x + 2). Defendant shall pay all amortized principal, interest and late fees, if any, up to the date of settlement.

ROBERTS v. ROBERTS

[173 N.C. App. 354 (2005)]

4. Defendant shall immediately take all steps necessary to satisfy the joint mortgage lien secured thereby, removing Plaintiff's name from the existing Note and Deed of Trust.

Defendant argues that the trial court erred by ordering specific performance of the premarital agreement without making a finding of fact that there was no adequate remedy at law. We conclude it is unnecessary to reach this issue on the facts of this case. The only reference to specific performance is in paragraph three of the decretal part of the order. Paragraph three basically reiterates the provisions of the other paragraphs in the order, and the "specific performance" described therein orders defendant to pay plaintiff the same amount of money that the court ordered in paragraph one. Because the practical result for the parties would be the same even if paragraph three were deleted, we conclude that it is unnecessary to reach the issue of whether the court's order of "specific performance" is adequately supported by its findings of fact. This assignment of error is overruled.

## Plaintiff's Appeal—Joint Checking Account

[6] Plaintiff appeals the trial court's award of summary judgment for defendant on her claim for breach of the premarital agreement's terms pertaining to the parties' joint checking account. Plaintiff contends that summary judgment in her favor should have been granted.

The premarital agreement addressed the parties' joint checking account, in pertinent part, as follows:

. . . .

10. . . . The parties will open a joint checking account into which Ron and Sue will each contribute monthly amounts. The amount to be contributed by each spouse shall be mutually agreed upon by Ron and Sue. At the commencement of the marriage, the amount contributed will be $400 by Sue and $4,417 by Ron. . . . From said joint checking account shall be paid the routine living expenses of the parties including the house payment on the primary residence of the parties[.] . . . In the event that Ron and Sue separate, all jointly held property shall be divided equally between Ron and Sue. Until such time as any indebtedness on jointly held real property is satisfied, Ron and Sue will continue to contribute to the joint checking account.

**ROBERTS v. ROBERTS**

[173 N.C. App. 354 (2005)]

The parties agree that the above-quoted language required that they open a joint checking account, into which plaintiff and defendant agreed to make monthly deposits of $400 and $4,417, respectively. It is also undisputed that the premarital agreement required that, if the parties separated, they would nonetheless "continue to contribute to the joint checking account" until "any indebtedness on jointly held real property is satisfied[.]" Thus, according to the plain language of the premarital agreement, we conclude the parties were to continue making monthly contributions to the joint checking account, even after separating, until resolution of the real estate buyout issue.

Defendant argues that the trial court correctly entered summary judgment in his favor. He first asserts that the statement in the premarital agreement that "[t]he amount to be contributed by each spouse shall be mutually agreed upon by Ron and Sue" reduces the provisions for a joint checking account to no more than an "agreement to agree" that is "unenforceable." Defendant's argument, that the parties never agreed on contribution amounts, is belied by the agreement itself, which plainly states that "At the commencement of the marriage, the amount contributed will be $400 by Sue and $4,417 by Ron." These are mutually agreed on amounts, and no further agreement was required unless the parties wanted to change these amounts.

In a related argument, defendant contends that the premarital agreement required the parties to contribute to the joint checking account "only as long as they agree[d]" to do so. Defendant asserts that once the parties ceased to have "a functional marriage," he no longer wanted to contribute to the joint checking account. Defendant's position is that, as soon as he stopped wanting to participate in the joint checking account, there was no longer the "mutual agreement" required under the premarital agreement. In a similar argument, defendant argues that he could disavow the joint checking account after the parties ceased to have a "functional" relationship. Defendant cites no authority that would allow a party to evade compliance with a valid contract on the grounds that he "no longer agreed" to it or because the parties ceased to have a relationship, and we find none.

We conclude that the premarital agreement required plaintiff and defendant to contribute to their joint checking account. We further conclude that they were required to continue these payments after their separation, until such time as their joint indebtedness on the

ROBERTS v. ROBERTS

[173 N.C. App. 354 (2005)]

Hobbs Road property was satisfied. Accordingly, the trial court's order of summary judgment for defendant must be reversed, and this matter remanded for entry of summary judgment in favor of plaintiff on the issue of defendant's ongoing obligation to continue making payments to the joint checking account based on provisions of a valid, enforceable agreement.

## Attorneys' Fees

[7] The parties have both appealed from the trial court's award of attorneys' fees, awarded pursuant to paragraph sixteen (16) of the premarital agreement. This paragraph provides that in "any proceeding to enforce the provisions of this Agreement, the party prevailing whether by adjudication or settlement shall recover reasonable attorney's fees from the other party." In the instant case, the trial court granted summary judgment for defendant on one claim, and summary judgment for plaintiff on the other. However, we have determined that plaintiff is entitled to at least partial summary judgment on the claim concerning the joint checking account, and have upheld summary judgment in her favor on the claim concerning the real estate buyout provision. As there is no way to ascertain the role that the trial court's order of summary judgment for defendant played in its award of attorneys fees, we reverse and remand with instructions to the trial court to enter a new award of fees as a part of its final order.

We conclude that the trial court's order of summary judgment for plaintiff on claims arising from the real estate buyout provision should be affirmed; the court's entry of summary judgment for defendant on claims arising from the parties' joint checking account should be reversed; and that the trial court's order for attorneys' fees should be reversed and remanded for entry of a new order.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and CALABRIA concur.