Elliott v. KB Home North Carolina, Inc., 2012 NCBC 55

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 08 CVS 21190 |

MARK ELLIOTT, TOR AND MICHELLE )
GABRIELSON, MICHIHIRO AND YOKO )
KASHIMA, on behalf of themselves and all )
others similarly situated, )
                Plaintiffs )
                 )
        v. )
                 )    **OPINION AND ORDER**
KB HOME NORTH CAROLINA, INC. and )   **ON MOTIONS TO STAY, MOTION**
KB HOME RALEIGH-DURHAM, INC., )   **TO VOLUNTARILY DISMISS AND**
            Defendants )      **MOTION TO INTERVENE**
                 )
and )
                 )
KB HOME RALEIGH-DURHAM, INC., )
            Third-Party Plaintiff )
                 )
        v. )
                 )
STOCK BUILDING SUPPLY, LLC, )
            Third-Party Defendant )

       THIS MATTER comes before the court upon Defendant/Third-Party Plaintiff KB Home Raleigh-Durham Inc.'s Motion to Stay and Compel this Action into Arbitration and Memorandum of Law in Support Thereof ("First Motion to Stay"), the unnamed class members' Motion to Intervene ("Motion to Intervene"), Defendant KB Home Raleigh-Durham Inc.'s Motion to Stay and Compel Arbitration as to Proposed Plaintiffs-in-Intervention and Memorandum of Law in Support Thereof ("Second Motion to Stay") and the unnamed class members' Motion to Voluntarily Dismiss Motion to Intervene ("Motion to Voluntarily Dismiss") (collectively, "Motions"); and

THE COURT, after considering the Motions, briefs and arguments in support of and in opposition to the Motions, other submissions of counsel and appropriate matters of record, and as discussed in this Opinion and Order, FINDS and CONCLUDES that the First Motion to Stay should be DENIED; the Motion to Intervene should be DENIED; the Second Motion to Stay should be DENIED and the Motion to Voluntarily Dismiss should be GRANTED.

> *Whitfield Bryson & Mason LLP, by Daniel K. Bryson, Esq., Scott C. Harris, Esq., Gary E. Mason, Esq. and Nicholas A. Migliaccio, Esq. for Plaintiffs and unnamed class members.*
>
> *Bradley Arant Boult Cummings LLP, by Michael W. Knapp, Esq. and Ryan L. Beaver, Esq. for Defendant/Third-Party Plaintiff KB Home Raleigh-Durham, Inc.*
>
> *Hunton and Williams LLP, by A. Todd Brown, Esq. and Ryan G. Rich, Esq. for Third-Party Defendant Stock Building Supply, LLC.*

Jolly, Judge.

I.

PROCEDURAL BACKGROUND

[1]     On December 5, 2008, Plaintiffs filed their Class Action Complaint ("Complaint") in this civil action as a putative class action against Defendant KB Home Raleigh-Durham, Inc. ("KB Home") and KB Home North Carolina, Inc. ("KB Home NC") alleging five claims for relief ("Claim(s)"): Count I – Breach of Contract ("Claim One"), Count II – Breach of Express Warranties ("Claim Two"), Count III – Breach of Implied Warranties ("Claim Three"), Count IV – Negligence ("Claim Four"), Count V – Negligence *Per Se* ("Claim Five"), Count VI – Unfair and Deceptive Trade Practices ("Claim Six") and Count VII – Negligent Misrepresentation ("Claim Seven").  All of the Claims arise from the alleged installation of James Hardie's HardiPlank cement fiber lap

siding ("HardiPlank") on Plaintiffs' homes without a weather-resistive barrier behind the HardiPlank.

[2] On February 6, 2009, KB Home and KB Home NC filed a Motion to Dismiss Plaintiffs' Complaint. On July 17, 2009, the court dismissed KB Home NC from this action.

[3] On January 7, 2010, KB Home filed a Third-Party Complaint against Third-Party Defendant Stock Building Supply, LLC ("Stock") alleging breach of contract, negligence and indemnity.

[4] On June 17, 2010, this case was designated as an exceptional and complex business case pursuant to Rules 2.1 and 2.2 of the General Rules of Practice for the Superior and District Courts.

[5] On March 31, 2011, Plaintiffs filed a Motion for Class Certification. The court granted that motion on February 27, 2012, and entered an Order on Class Certification certifying this matter as a class action.

[6] On March 28, 2012, KB Home appealed the Order on Class Certification ("Appeal") to the North Carolina Court of Appeals.

[7] On April 12, 2012, KB Home filed both the First Motion to Stay and a Motion for Stay of Proceeding Pending Appeal ("Motion to Stay Pending Appeal"). After conducting a telephone hearing, the court denied the Motion to Stay Pending Appeal on April 13, 2012.

[8] On July 30, 2012, the unnamed class members filed the Motion to Intervene, seeking to intervene in this civil action as named plaintiffs to preserve their

rights in the event the Order on Class Certification was overturned as a result of the Appeal.

[9]     On August 22, 2012, KB Home filed the Second Motion to Stay, seeking to compel arbitration with respect to the unnamed class members in the event the court granted the Motion to Intervene.

[10]    On August 28, 2012, the North Carolina Court of Appeals dismissed the Appeal.

[11]    As a result of the dismissal of the Appeal, on September 10, 2012, the unnamed class members filed the Motion to Voluntarily Dismiss, seeking to voluntarily dismiss the Motion to Intervene without prejudice.

[12]    The Motions have been fully briefed and are ripe for determination.

II.

DISCUSSION

[13]    KB Home contends that this action, including all of Plaintiffs' Claims and the third-party claims, should proceed to arbitration in the manner provided for in the parties' arbitration agreements and that this action should be stayed pending completion of the arbitration process.[1]

[14]    In response, Plaintiffs dispute whether there is a controlling agreement to arbitrate between the parties.  They further argue that even if an agreement to arbitrate

---

[1] Def. KB Home's Mot. Stay Compel Action Arbit'n Mem. Supp. ("KB Home Memo") 19.

exists, KB Home has waived its right to arbitrate.[2] Stock also opposes the First Motion

to Stay on the grounds that there is no controlling agreement to arbitrate.[3]

A.

General Principles of Arbitration

[15]     Both the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and the

North Carolina Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.1 *et seq.*

("NCRUAA") (hereinafter, all references to the North Carolina General Statutes will be

to "G.S.") make clear that arbitration agreements are favored and should generally be

enforced by the courts.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745,

1748 (2011) (recognizing that "[t]he FAA was enacted in 1925 in response to

widespread hostility to arbitration agreements" and the "'principal purpose' of the FAA is

to 'ensur[e] that private arbitration agreements are enforced according to their terms'").

[16]     North Carolina has a strong public policy in favor of resolving disputes

through arbitration.  *Johnston Cnty. v. R.N. Rouse & Co.*, 331 N.C. 88, 91 (1992).  As

such, courts should "resolve any doubts concerning the scope of arbitrable issues in

favor of arbitration."  *Id.*; *see also Cyclone Roofing Co. v. David M. La Fave Co.*, 312

N.C. 224, 229 (1984) (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S.

1, 24-25 (1983)) ("[A]ny doubt concerning the scope of arbitrable issues should be

resolved in favor of arbitration, whether the problem at hand is the construction of the

---

[2] Opp'n Def. KB Home's Mot. Stay Compel Action Arbit'n Att'ys Fees ("Plaintiffs Memo") 7-8.
[3] Based on representations contained in the KB Home Memo, it appeared to the court that Stock did not oppose the First Motion to Stay at the time it was filed.  *See* KB Home Memo 22 (stating in the Certificate of Consultation with Opposing Counsel that "[Stock] agrees with [KB Home]'s position articulated in this brief.").  Notwithstanding this representation, on May 7, 2012, Stock submitted a responsive brief in opposition to the First Motion to Stay.  Accordingly, the court will treat the First Motion to Stay as contested with respect to all parties and all claims.

contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

[17]    Under both the FAA and the NCRUAA,[4] courts apply a two-part test to determine whether to compel arbitration of a dispute: "(1) whether a valid arbitration agreement exists, and (2) whether the particular dispute is within the agreement's substantive scope." *In re W.W. Jarvis & Sons*, 194 N.C. App. 799, 803 (2009); *see also Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 455 (2000) ("In considering a motion to compel arbitration, the trial court should determine (1) the validity of the contract to arbitrate and (2) whether the subject matter of the arbitration agreement covers the matter in dispute."). The party seeking to compel arbitration has the burden of establishing that each prong is satisfied. *Revels v. Miss Am. Org.*, 165 N.C. App. 181, 188 (2004).

B.

The Alleged Arbitration Agreement between Plaintiffs and KB Home

[18]    As the party seeking to compel arbitration, KB Home has the burden of establishing that the parties entered into a valid arbitration agreement and that the current dispute falls within the scope of such agreement. KB Home contends that the First Motion to Stay should be granted with regard to the named Plaintiffs because at times material each homeowner executed a New Home Purchase Agreement ("Purchase Agreement") and a New Home Limited Warranty Agreement ("Warranty

---

[4] Whether or not the FAA or NCRUAA applies to the parties' arbitration agreements is inconsequential for purposes of this Opinion and Order. *See Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 477 (2003) ("North Carolina's stance on arbitration is very close, if not identical, to the federal stance."). Additionally, in light of the court's conclusion that KB Home has waived its right to arbitrate the Claims, discussed *infra*, it is immaterial and unnecessary for the court to determine whether the FAA or NCRUAA governs.

Agreement"), both of which contain valid arbitration agreements that cover the disputes at issue.[5]

[19]     Plaintiffs' principal response is two-fold.  They argue that the Warranty Agreement, rather than the Purchase Agreement, governs the parties' dispute and that the Warranty Agreement's arbitration provision is unenforceable because it imposes a voluntary requirement to arbitrate.  Moreover, Plaintiffs argue that even if a valid and enforceable arbitration agreement exists, KB Home has waived its right to compel arbitration in this matter.[6]

1.

Does a Valid Arbitration Agreement Exist?

[20]     The same principles that govern contract formation govern arbitration agreements.  "It is well established that a valid contract arises only where there is assent between the parties, amounting to a meeting of the minds."  *Revels v. Miss N.C. Pageant Org., Inc.*, 176 N.C. App. 730, 733-34 (2006).  Where, as here, Plaintiffs contend that a valid arbitration agreement does not exist, the court must examine the arbitration agreement "to ascertain the intention of the parties."  *Id.* (quoting *Walker v. Goodson Farms, Inc.*, 90 N.C. App. 478, 186 (1988).  In doing so, "the parties' intentions control and their intentions may be discerned from their . . . writings . . . ."  *Walker*, 90 N.C. App. at 486.  However, the court must give effect to the plain and unambiguous language in the contract.  *R.N. Rouse & Co.*, 331 N.C. at 95.

---

[5] KB Home Memo 11-16.
[6] Plaintiffs Memo 18-20.

[21]     Plaintiffs make no argument regarding the validity of the arbitration provisions contained within the Purchase Agreement.[7]  Section 35 of the Purchase Agreement addresses "[m]ediation and [a]rbitration" of future disputes that may arise between the parties.  Specifically, this section states, "[i]n the event of any dispute related to the [home] or this Agreement, the parties shall first mediate their dispute . . ." and if mediation does not settle the dispute, "then this Agreement shall be subject to arbitration under the [FAA]."[8]  This language on its face is unambiguous.  In light of Plaintiffs' lack of argument with respect to the validity of the arbitration agreement, along with the court's review of the plain and unambiguous language, the court concludes that the Purchase Agreement contains a valid and enforceable arbitration agreement.

[22]     Plaintiffs do dispute the enforceability of the arbitration provisions contained within the Warranty Agreement.  Plaintiffs' argument with respect to the enforceability of the Warranty Agreement's arbitration provisions is based upon their contention that there is no valid arbitration clause because the arbitration provisions are void as "illusory" promises.[9]  In substance, Plaintiffs argue that the arbitration provisions are not mandatory, and Plaintiffs therefore should be allowed to litigate their Claims in a court of law.[10]

[23]     As stated above, the purpose of contract interpretation is to ascertain the intention of the parties at the time the parties entered into the contract.  *See Gould Morris Elec. Co. v. Atl. Fire Ins. Co.*, 229 N.C. 518, 520 (1948) ("The heart of a contract

---

[7] Plaintiffs argue that the current disputes fall within the scope and provisions of the Warranty Agreement and not the Purchase Agreement.  *Id.* 18 ("[The disputes at issue] are to be governed not by the [Purchase Agreement], but by the Warranty [Agreement] . . . .").  The scope of the respective arbitration provisions is discussed *infra*.
[8] Purchase Agreement § 35.1.
[9] Plaintiffs Memo 18.
[10] *Id.* 19-21.

is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.").  To do so, the court must apply accepted principles of contract interpretation by construing the contract as a whole and giving effect to the plain and unambiguous language in the contract.  *See R.N. Rouse & Co.*, 331 N.C. at 95; *Sell v. Hotchkiss*, 264 N.C. 185, 190 (1965).

[24]     KB Home contends that the arbitration provisions from the Warranty Agreement and Purchase Agreement, taken together, show the parties agreed to arbitrate the Claims before proceeding with litigation.[11]

[25]     Section E of the Warranty Agreement outlines the process to follow to handle warranty coverage disputes.[12]  Section E.1 of the Warranty Agreement sets out the parties' intentions.  That section, entitled "Intent of the Parties," states that disputes related to the Warranty Agreement "shall be resolved according to the . . . provisions of . . . [s]ection E."  Section E.1 further states that if Plaintiffs are "not satisfied with [KB Home's] . . . handling of a [dispute], [each Plaintiff] understands and agrees that *this Warranty Agreement requires [Plaintiffs] to go through the entire process described in this [s]ection E before filing any lawsuit* against [KB Home] . . . ."[13] (emphasis added).

[26]     The process set out in section E contemplates that the parties will attempt to settle any dispute that arises under the Warranty Agreement informally through a negotiation process.[14]  The negotiation process is the first required step in resolving a

[11] KB Home Reply Br. Pls. Opp'n Mot. Stay Compel Action Arbit'n 10.
[12] Specifically, section E.3 of the Warranty Agreement deals with arbitration.  However, the court must consider all of section E to determine whether or not the parties agreed to arbitration.
[13] Warranty Agreement § E.1.
[14] *Id.* § E.2.

warranty dispute.[15] As part of the negotiation process, the parties must participate in a conference in an attempt to settle the dispute.[16]

[27] Plaintiffs argue that an excerpt from section E.2(G) indicates the voluntary nature of the arbitration requirement.[17] The relevant portion of section E.2(G) states:

> If, after such [c]onference . . . the entire [d]ispute has not been resolved, then [Plaintiffs] may, but shall not be required to, proceed to Arbitration as described in [s]ubsection 3, below. If, as a result the [c]onference, certain issues in the [d]ispute have been resolved, the parties shall jointly state in writing the issues that have been resolved and the issues which remain unresolved and will require Arbitration. Although Arbitration is the next formal and required step in the dispute resolution procedure, the parties may continue to negotiate informally to resolve the [d]ispute . . . .[18]

Plaintiffs direct the court's attention to that portion of this section that states Plaintiffs "may, but shall not be required to, proceed to Arbitration." Plaintiffs' reliance on this excerpt, in support of their argument that arbitration is voluntary, is misguided. Rather, this excerpt, when read together with all of section E, makes clear that Plaintiffs do not have to proceed any further with the dispute resolution process if the negotiations and conference outlined in section E.2 fail to resolve the dispute. However, this does not mean that Plaintiffs can proceed with litigation without first participating in arbitration. To the contrary, section E.3, entitled "Arbitration of Disputes," states:

> In the event that the [p]arties have the entire "Negotiation" process as described in and required by [s]ubsection E.2 above, but failed to resolve the [d]ispute, . . . then, if either of the [p]arties wishes to pursue the matter further, the unresolved aspects of the [d]ispute shall be resolved by Arbitration . . . .[19]

---

[15] *Id.* § E.2(B).
[16] *Id.* § E.2(D)-(G).
[17] Plaintiffs Memo 19.
[18] Warranty Agreement § E.2.G.
[19] *Id.* § E.3.A.

[28]    Plaintiffs are not required to proceed beyond the negotiations process set out in section E.2.G and initiate arbitration.  However, if Plaintiffs wish to litigate the Claims, the Warranty Agreement requires them to arbitrate before doing so.  Accordingly, the court finds that the arbitration agreements in both the Purchase Agreement and Warranty Agreement are valid and enforceable.

2.

Scope of the Arbitration Agreements

[29]    The second prong of the two-part test that must be met to compel arbitration requires the dispute at issue to be within the scope of the parties' arbitration agreement.  *Sloan*, 159 N.C. at 478 (citing *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996)).  The scope of an arbitration agreement is a matter of contract law.  The parties must state in their agreement which disputes are subject to arbitration.  *Futrelle v. Duke Univ.*, 127 N.C. App. 244, 248 (1997).  Ambiguities regarding the scope of the arbitration agreement should be resolved in favor of arbitration.  *Raspet v. Buck*, 147 N.C. App. 133, 135 (2001); *see also Sloan*, 159 N.C. at 479 ("It is in this second step of either analysis where the presumption in favor of arbitration exists.").

[30]    KB Home argues that all of Plaintiffs' Claims fall within the scope of either the Purchase Agreement or Warranty Agreement.[20]  It is Plaintiffs' contention that if

---

[20] KB Home Memo 14.

there is a valid arbitration agreement, the Claims are governed by the Warranty Agreement's arbitration provisions.[21]

[31] The arbitration provision from the Purchase Agreement states, at section 35.1, that:

> [A]ll claims, demands, disputes, controversies and differences that may arise between the parties to this Agreement . . . of whatever nature or kind, including, without limitation, disputes: ([a]) as to events, representations, or omissions, which predate this Agreement; ([b]) arising out of this Agreement; and/or ([c]) relative to the construction contemplated by this Agreement arising prior to the Closing shall be submitted to binding arbitration . . . .[22]

However, the above arbitration provision is limited by section 35.3. Section 35.3 states:

> [T]his Section shall not apply to any repairs or warranty claims with respect to the [h]ome arising after the construction is completed and the Closing has occurred hereunder and shall expressly NOT control over the dispute resolution provisions in the Warranty [Agreement] for such repairs or warranty claims. . . . [A]ny such repairs or warranty claims shall be governed by the Warranty [Agreement] coverage disputes provisions of the Warranty [Agreement] . . . .[23]

Interpreting the above language, it appears to the court that all Claims arising between the parties fall within the expansive scope of the arbitration provisions contained in the Purchase Agreement. Any Claim excepted from the arbitration provisions in the Purchase Agreement would fall within the scope of the arbitration provisions in the Warranty Agreement.

---

[21] Plaintiffs Memo 18-19. Plaintiffs assert that "[i]t is undeniable that Plaintiffs' claims qualify as 'repairs or warranty claims with respect to the [h]ome arising after the construction is completed' under the [Warranty Agreement]." *Id.* However, despite this assertion, Plaintiffs do not explain why their Claims are undeniably repair or warranty claims as such claims are defined pursuant to the Warranty Agreement.
[22] Purchase Agreement § 35.1.
[23] *Id.* § 35.3.

[32]   Consequently, it appears that all Claims fall within the scope of the arbitration provisions in either the Purchase Agreement or the Warranty Agreement.[24] Therefore, the court CONCLUDES that all of Plaintiffs' Claims are within the scope of the arbitration agreements at issue.

3.

Waiver Defense

[33]   In opposition to the First Motion to Stay, Plaintiffs' argue that KB Home waived its right to arbitrate under both the Purchase Agreement and Warranty Agreement by failing to assert its contractual right to arbitration earlier.[25]  KB Home argues that it has timely asserted its right to arbitrate against all Plaintiffs.  However, in the alternative, KB Home seeks to persuade the court that even if waiver is found with respect to the named Plaintiffs, waiver should not be found with respect to the unnamed class members because KB Home could not have compelled arbitration against the unnamed class members at any time before the court certified the class.[26]

[34]   "It is well established that arbitration may be waived because it is a right arising from contract."  *Herbert v. Marcaccio*, __ N.C. App. __, 713 S.E.2d 531, 535 (2011).  Whether a party has waived its right to arbitrate is a question of fact for the court.  *Id.*  North Carolina's strong public policy in favor of arbitration dictates that any doubt with regard to the arbitrability of a claim should be "resolved in a manner which favors arbitration."  *Capps v. Virrey*, 184 N.C. App. 267, 270 (2007) (citing *Smith v. Young Moving & Storage, Inc.*, 141 N.C. App. 469 (2000).  "This is true 'whether the

---

[24] Based on the court's conclusion that KB Home has waived its right to arbitrate the Claims, discussed *infra*, it is not necessary for the court to determine which arbitration agreement governs which Claim.
[25] Plaintiffs Memo 14-18.
[26] KB Home Memo 18-19.

problem at hand is the . . . allegation of waiver, delay or a like defense to arbitrability.'"

*Id.* (quoting *Cyclone Roofing*, 312 N.C. at 229). The Fourth Circuit has held that waiver of the right to arbitrate is "not to be lightly inferred" and "the party opposing arbitration bears a 'heavy burden of proving waiver.'" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249-51 (4th Cir. 2001) (quoting *Am. Recovery Corp.*, 96 F.3d at 95).

[35] The North Carolina Supreme Court has recognized that a party waives its right to compel arbitration if it acts inconsistently with arbitration, and the party opposing arbitration can show it has been prejudiced as a result. *Servomation Corp. v. Hickory Constr. Co.*, 316 N.C. 543, 544 (1986). In that case, the supreme court explained that:

> A party may be prejudiced by his adversary's delay in seeking arbitration if [a] it is forced to bear the expense of a long trial, [b] it loses helpful evidence, [c] it takes steps in litigation to its detriment or expends significant amounts of money on the litigation, or [d] its opponent makes use of judicial discovery procedures not available in arbitration.

*Id.*

[36] Applying the *Servomation* holding to the present case, Plaintiffs have neither been forced to bear the expense of long trial, nor have Plaintiffs lost helpful evidence. Consequently, Plaintiffs' principal argument for waiver is that they have been prejudiced by incurring significant litigation expenses to date and that KB Home has engaged in discovery procedures not available in arbitration.

[37] When determining whether delay in requesting arbitration resulted in significant litigation expense and prejudice to the party opposing arbitration, "the trial court must make findings whether the expenses occurred after the right to arbitration accrued, and whether the expenses could have been avoided through an earlier

demand for arbitration." *Herbert*, 713 S.E.2d at 536 (citing *Culberson v. REO Props. Corp.*, 194 N.C. App. 793, 798-99 (2009)).

[38]    Here, Plaintiffs argue that KB Home's right to arbitrate this dispute arose in December 2008 when the named Plaintiffs filed their Complaint.[27]  KB Home did not file the First Motion to Stay until April 12, 2012.  That was more than three years after this action was filed and after substantial effort, time and money had been expended by the parties in discovery, motion practice and related procedural pre-trial initiatives.[28]  KB Home could have asserted its arbitration rights much sooner in this dispute, but chose not to do so.  The court finds and concludes that by such delay KB Home acted inconsistently with its arbitration rights.  Notwithstanding this conclusion, Plaintiffs must still show that they have been prejudiced by KB Home's delay.

[39]    To show prejudicial effect, Plaintiffs have submitted evidence of fees and other expenses incurred by Plaintiffs.[29]  In totality, Plaintiffs have incurred approximately $100,000 in fees and other expenses litigating the Claims.[30]  The costs that have been incurred are the result of the parties participating in four hearings,[31] taking or defending twenty depositions across the country, obtaining and working with expert witnesses and engaging in other discovery.[32]  These costs have been incurred by the named Plaintiffs while litigating the Claims on their own behalf and also while litigating the Claims on

---

[27] The Complaint was filed on December 5, 2008.
[28] Although neither required nor determinative, KB Home did not specifically assert its right to arbitration in either its Answer as an affirmative defense, filed on August 5, 2009, or in its response to Plaintiffs' Third Set of Interrogatories and Request for Production of Documents.
[29] *See* Decl. Gary E. Mason.
[30] *Id.* ¶ 5.  These fees and expenses accrued from preparing for and attending negotiation conferences, depositions, motions and hearings, as well as fees spent on expert testimony.  *Id.* ¶¶ 2-5.
[31] The four hearings held have been on KB Home's Motion to Dismiss, Plaintiffs' Motion to Compel Discovery of KB Home, Plaintiffs' Motion for Class Certification and KB Home's Motion to Stay Pending Appeal.  *Id.* ¶ 4.
[32] *Id.* ¶¶ 2-4.

behalf of the unnamed class members. KB Home's delayed attempt to enforce the arbitration provisions only after Plaintiffs have expended material amounts of time and resources in pursuing their Claims would be prejudicial to Plaintiffs.[33] Such time and resources were expended after KB Home's right to arbitrate accrued and could have been avoided through an earlier demand for arbitration. KB Home could have demanded arbitration as early as 2008, well before the named Plaintiffs actively litigated the Claims. Permitting KB Home to enforce its arbitration rights now would be inconsistent with the principles of waiver outlined in *Servomation*. Accordingly, the court CONCLUDES that KB Home has waived its right to compel the named Plaintiffs to arbitrate their Claims.[34]

[40]    The court must also consider whether KB Home has waived its right to compel arbitration with respect to the unnamed class members. KB Home argues that it could not have asserted its arbitration rights against the unnamed class members at any time before the court certified the class on February 27, 2012.[35] The court is not persuaded by KB Home's argument.

[41]    Permitting KB Home to compel arbitration with regard to the unnamed class members would be prejudicial to the named Plaintiffs. The reality of class-action litigation requires the named Plaintiffs to incur expenses litigating the Claims on behalf

---

[33] In *Prime S. Homes, Inc. v. Byrd*, 102 N.C. App. 255 (1991), the party seeking to compel arbitration was found to have waived that right when the opposing party "had expended in excess of $10,000 in legal fees, a sizeable portion of which would not have been incurred . . . had [arbitration been] sought within a reasonable time." *Id.* at 261.

[34] In light of this conclusion, the court need not consider Plaintiffs' other arguments for determining that KB Home waived its right to arbitrate.

[35] KB Home cites to several federal cases as support for the proposition that a court has jurisdiction to adjudicate the rights of putative class members only after the class has been certified. *See, e.g.*, *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006). Notwithstanding this statement of law, a party can still waive its right to arbitrate disputes with unnamed class members by waiting too long to exercise its arbitration rights with the named plaintiffs.

of the entire class, which the named Plaintiffs in this case have done for more than three years. Allowing KB Home to compel arbitration with respect to the unnamed class members would render the named Plaintiffs' efforts pursuing the class Claims meaningless. KB Home had knowledge that the named Plaintiffs were litigating the Claims as a class action from the outset and were incurring substantial costs while doing so.[36] Simply put, KB Home sat on its rights to arbitrate for too long.[37] Therefore, KB Home is barred from exercising any alleged arbitration rights now, even as to the unnamed class members. For the foregoing reasons, the court further CONCLUDES that KB Home has waived its right to compel the unnamed class members to arbitrate the Claims. Accordingly, the First Motion to Stay should be DENIED with respect to all Plaintiffs.

---

[36] KB Home was on notice no later than December 5, 2008, that the named Plaintiffs were bringing their Claims as a class action when the Complaint was filed. Moreover, evidence suggests that KB Home had notice of Plaintiffs' class action Claims, even before the Complaint was filed, during informal negotiations to resolve the dispute. *See* Decl. Gary E. Mason ¶ 2 ("Throughout the [negotiation] process, Plaintiffs represented that they were acting on their behalf and on behalf of similarly situated homeowners.").

[37] The court is also concerned by KB Home's attempt to compel arbitration as to the unnamed class members, thereby effectively "undoing" this court's Order on Class Certification and getting the proverbial "second bite at the apple" for class certification. In *Kingsbury v. U.S. Greenfiber, LLC*, an unpublished federal district court decision, the court addressed a similar issue (i.e., whether a defendant can compel arbitration as to the unnamed class members after a class has been certified) and was presented with similar arguments (i.e., arbitration should be granted with respect to unnamed class members because they have not been prejudiced and were not before the court prior to class certification) as those addressed and presented to this court. No. CV08-00151-AHM, 2012 U.S. Dist. LEXIS 94854, (C.D. Cal., June 29, 2012). In *Kingsbury*, the court stated:

> Moreover, to accept [defendant's arguments and compel arbitration] would be to condone gamesmanship in the class certification process. A defendant could wait in the weeds and delay asserting its arbitration rights. It could file motions to dismiss, litigate the named plaintiff's legal theories, and oppose class certification motions. If and when a class is finally certified, the defendant could simply assert its arbitration rights and defeat certification of the previously-certified class. In the interests of the fair and efficient administration of justice, the Court cannot accept [defendant's] position.

*Id.* For the same considerations of fairness and the efficient administration of justice outlined by the court in *Kingsbury*, this court cannot accept KB Home's argument that it has not waived its right to arbitrate with respect to the unnamed class members.

C.

The Alleged Arbitration Agreement between KB Home and Stock

[42] The First Motion to Stay seeks to compel all claims presented in this action into arbitration, including KB Home's third-party claims against Stock. As discussed above, KB Home has the burden of establishing that a valid agreement to arbitrate exists between KB Home and Stock and that the dispute falls within the scope of any such agreement. KB Home argues that the contract it entered into with Stock in 2004 ("Subcontract") contained a valid arbitration agreement. The substance of Stock's argument in opposition to the First Motion to Stay is that a valid contract does not exist between KB Home and Stock; thus, there is no valid arbitration agreement.[38] In this regard, Stock argues that the parties entered into a subsequent agreement, which replaced the Subcontract and did not include an arbitration agreement. KB Home contends that validity and enforceability of the Subcontract is not a question for the court to answer, but rather is a question for the arbitrator.

[43] Claims challenging the validity of the underlying contract, but not the arbitration agreement, raise issues that are appropriate for the arbitrator to decide, not the court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-49 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *accord Tillman v. Commer. Credit Loans, Inc.*, 362 N.C. 93, 119 (2008) (Edmunds, J., concurring) ("[C]laims . . . challenging the contract, in which the arbitration agreement is included . . . are for the arbitrator to decide.").

---

[38] Stock Memo 2-3.

[44]     Stock's principal argument in opposition to the First Motion to Stay focuses on the contended unenforceability of the Subcontract.  Specifically, Stock argues that the Subcontract is unenforceable because it does not have a description of the subject matter, contains no description of the work or services to be provided by Stock, lacks pricing terms and is not signed by KB Home.[39]

[45]     Stock's argument with respect to the underlying validity of the contract is misplaced in regard to the First Motion to Stay.  Stock does not argue in its brief that the arbitration agreement is invalid and unenforceable.  It is well-settled law that arguments similar to Stock's raise questions that are to be decided by an arbitrator.  However, the foregoing notwithstanding, KB Home still has the burden, as the party seeking to compel arbitration, of showing that the parties agreed to a valid and enforceable arbitration agreement and that the dispute in question falls within the scope of the arbitration agreement.  *See* Revels, 165 N.C. App. at 188; *Raspet*, 147 N.C. App. at 135.  KB Home relies on the following language from paragraph 14 of the Subcontract in support of its argument that it and Stock agreed to arbitration:

> [Stock] agrees that, upon written request of [KB Home], [Stock] shall participate as a party in, and also separately defend as set forth above, by paying Indemnified Parties' expenses as incurred by [KB Home] with respect to any alternative dispute resolution proceeding . . . related to investigation and resolution of Claims, Claims brought pursuant to statute by homebuyers, successive homebuyers . . . or Claims arising out of [KB Home's] new home limited warranty . . . .[40]

---

[39] Stock Memo 5-6.  In a motion to dismiss, Stock made the same arguments with regard to the unenforceability of the Subcontract.  Stock's Br. Supp. Mot. Dismiss Third Party Compl. Def. Third Party Pl. KB Home 6-10.  That motion was denied by this court on August 8, 2011.

[40] Subcontract ¶ 14(e).  "Claims", as that term is defined by the Subcontract, refers to "any and all claims, demands, causes of action . . . in law or equity, contract or tort . . . of every kind and nature whatsoever that in any way arise out of or relate to this Subcontract . . ." that may be brought against KB Home and for which Stock must indemnify KB Home.  *Id.* ¶ 14(a).

[46]     KB Home also directs the court's attention to language from paragraph 10 in the Subcontract as further evidence of Stock's agreement to arbitrate.  Among other things, paragraph 10 states:

> [Stock]  acknowledges and agrees that, regardless of the forum that is used for dispute resolution with a single homeowner, multiple homeowners or an association involving the work of this Subcontract, [Stock] shall willingly participate in such dispute resolution forum to the extent any of its indemnification obligations under paragraph 14 of this Subcontract are triggered.[41]

Paragraphs 10 and 14 only obligate Stock to participate in dispute resolution proceedings between KB Home and Plaintiffs and only to the extent such obligation is triggered by one of the Subcontract's indemnification provisions.

[47]     As stated previously, the court "cannot rewrite the plain meaning of the contract."  *Montgomery v. Montgomery*, 110 N.C. App. 234, 238 (1993).  Further, when construing language in a contract, the court should give ordinary words their ordinary meanings.  *Biggers v. Evangelist*, 71 N.C. App. 35, 42 (1984).  Here, the language in the Subcontract is clear and unambiguous, and the court will interpret the Subcontract giving effect to the ordinary meaning of the words.

[48]     The court finds and concludes that the language relied upon by KB Home to persuade the court that Stock agreed to arbitration with KB Home is not compelling.  Rather, the language is indicative of an agreement for Stock to indemnify KB Home against certain claims that may be brought by homeowners against KB Home.  To the extent the Subcontract references Stock's participation in "alternate dispute proceedings," the Subcontract arguably obligates Stock to participate in such

---

[41] *Id.* ¶ 10(d).

proceeding as but one form of indemnification against homeowners claims.[42]  In this regard, any perceived agreement by Stock to participate in arbitration is contingent on KB Home successfully compelling Plaintiffs' Claims to arbitration.  However, there is no language in the Subcontract that states that KB Home and Stock agreed to arbitration to resolve their own disputes.

[49]    Additionally, the Subcontract contains a forum-selection clause and consent-to-jurisdiction clause in paragraph 32.[43]  Such clauses are not inherently inconsistent with arbitration agreements and can be construed together.  *See Internet East, Inc. v. Duro Communs., Inc.*, 146 N.C. App. 401 (2001) (holding that a forum-selection clause and arbitration provision do not conflict).  However, here the court finds the forum-selection and consent to jurisdiction clauses to be additional support for the conclusion that KB Home and Stock did not intend to enter into a valid and enforceable arbitration agreement.  Therefore, the court CONCLUDES that KB Home has not met its burden because it cannot show that it and Stock agreed to arbitrate their disputes. Accordingly, the First Motion to Stay should be DENIED with respect to Stock.

---

[42] The court makes no determination with regard to the enforceability or applicability of any contended obligation of Stock to indemnify KB Home under the Subcontract.  The court's interpretation of the indemnity provisions of paragraphs 10 and 14 is limited to this Opinion and Order regarding arbitration between Stock and KB Home.

[43] Subcontract ¶ 32.  Paragraph 32 states that "in the event a dispute should arise as to the performance of the obligations of the parties pursuant to this Subcontract, the parties will adjudicate any such disputes in the courts of the State of North Carolina . . . and each of the parties agree and expressly consent to the jurisdiction of the Courts of the State of North Carolina, which shall have in personam jurisdiction over the parties in connection with this Subcontract and in connection with any litigation which may arise . . . ." *Id.*

D.

## Motion to Intervene, Second Motion to Stay and Motion to Voluntarily Dismiss

[50]    The unnamed class members filed the Motion to Intervene out of an abundance of caution, seeking to preserve their rights to participate in this civil action if the class was decertified as a result of the Appeal.  However, the court of appeals dismissed the Appeal.  As a result of that dismissal, the unnamed class members filed the Motion to Voluntarily Dismiss, seeking dismissal[44] without prejudice of their Motion to Intervene.  The court CONCLUDES that good cause exists to GRANT the Motion to Voluntarily Dismiss.  Therefore, the Motion to Intervene should be DENIED, without prejudice.  Also, as a result of the above rulings, the court CONCLUDES that the Second Motion to Stay is MOOT and therefore should be DENIED.

E.

## Attorneys' Fees

[51]    Plaintiffs, in their responsive brief, request recovery of their attorneys' fees incurred in responding to the First Motion to Stay.[45]  Plaintiffs cite to G.S. 6-21.5 and Rule 11, North Carolina Rules of Civil Procedure ("Rule(s)"), in support for their request, arguing that the First Motion to Stay is both frivolous and filed for the improper purpose of delaying this civil action.[46]  The court finds this argument to be without merit and finds no basis for support of an award of attorneys' fees under either G.S. 6-21.5 or Rule 11.  Accordingly, Plaintiffs' request for attorneys' fees in responding to the First Motion to Stay should be DENIED.

---

[44] The court reads this to request that their Motion to Intervene be denied.
[45] Plaintiffs Memo 22.
[46] *Id.* 22-23.

III.

CONCLUSION

NOW THEREFORE, based on the foregoing, it hereby is ORDERED that:

[52]    Defendant KB Home Raleigh-Durham Inc.'s Motion to Stay and Compel this Action into Arbitration and Memorandum of Law in Support Thereof is DENIED.

[53]    The unnamed class members' Motion to Voluntarily Dismiss Motion to Intervene is GRANTED; therefore, the Motion to Intervene is DENIED, without prejudice.

[54]    Defendant KB Home Raleigh-Durham Inc.'s Motion to Stay and Compel Arbitration as to Proposed Plaintiffs-in-Intervention and Memorandum of Law in Support Thereof is DENIED, as MOOT.

[55]    Plaintiffs' request for attorneys' fees is DENIED.  Each party shall bear their own costs and attorneys' fees in responding to the First Motion to Stay.

[56]    On Tuesday, November 27, 2012, beginning at 11:00 a.m., in the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a status conference to address any issues going forward in this civil action.

This the 2nd day of November, 2012.